GEORGE P. SKOURAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES P. SKOURAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SPYROS P. SKOURAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLORENCE L. SKOURAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 103609, 103610, 103611, 103618. Promulgated December 17, 1941.

*Louis M. Weber, Esq.*, for the petitioners.
*Henry C. Clark, Esq.*, for the respondent.

OPINION.

HILL: Prior to 1935 the Skouras Brothers Securities Co., a partnership of which the first three petitioners herein were members, acquired $600,000 principal amount of 6½ percent convertible gold notes of Fox Metropolitan Playhouses, Inc., at a cost of $95,833.13. During the taxable year 1935, as a result of the reorganization of the corporation under section 77–B of the Bankruptcy Act, the partnership realized a gain upon the exchange of its convertible gold notes for certain securities of the new corporation and $120,000 in cash. Petitioners reported in their income tax returns their respective distributable shares of such gain to the extent only of the cash received by the partnership pursuant to section 112 (c) of the Revenue Act of 1934, on the theory that the 77–B reorganization resulted in nontaxable transfers within the meaning of section 112 (b) (5), or was a nontaxable reorganization within the meaning of section 112 (g) (1) (C) of the 1934 Act, quoted *supra*.

Upon audit of petitioners' returns, respondent held that the transaction constituted neither nontaxable exchanges nor a reorganization within the statute and that the entire amount of gain realized was subject to tax, and he computed the deficiencies upon the basis of a value of 67½ for the new notes exchanged for the old, and a value of 6¼ for the class B stock. These valuations were called in question by petitioners, but from a careful consideration of all the evidence, we are unable to conclude that respondent's bases do not reflect fair market value. We have, therefore, found as a fact that at the time of the exchange the securities had a fair market value in the amounts stated, and on this point we find for respondent.

The principal issue for decision is whether or not, under the facts set out hereinabove, the transaction constituted nontaxable transfers or a reorganization, within the purview of the taxing statute.

It is not necessary for a transaction to constitute a reorganization within section 112 (g) (1) in order to be a nontaxable transfer within section 112 (b) (5), but the same transaction may constitute both such transfer and reorganization. *Claude Neon Lights, Inc.*, 35 B. T. A. 424, 439.

To constitute a nontaxable transfer, it must appear that "property" was transferred to a corporation by one or more persons by prear-

rangement solely in exchange for stock or securities of the transferee corporation, and that immediately after such exchange the transferors collectively were in control of the corporation through ownership of not less than 80 percent of the voting and all other classes of stock (sec. 112 (h)). Also, in the case of an exchange by two or more persons it must appear that the amount of stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. However, coownership of transferred property is not essential, and the several transfers need not be effected simultaneously if pursuant to a prior arrangement; nor is control of the new corporation required to be vested in the transferors in proportion to their interests in the property prior to the exchange; this latter requirement pertains only to the total value of stocks and securities received. *F. L. G. Straubel*, 29 B. T. A. 516; cf. *Edwin L. Dana*, 36 B. T. A. 231; *Portland Oil Co.* v. *Commissioner*, 109 Fed. (2d) 479; certiorari denied, 310 U. S. 650, affirming 38 B. T. A. 957.

It is, furthermore, now well settled that money is "property" within the meaning of that term as used in section 112 (b) (5). *Halliburton* v. *Commissioner*, 78 Fed. (2d) 265; *Claude Neon Lights, Inc., supra; Portland Oil Co.* v. *Commissioner, supra.* In the *Halliburton* case the court remarked:

We think it is clear that the statute comprehends a situation such as presented in the instant case where certain persons transfer to a corporation certain property and property rights, other than money, while others transfer money only, and stock in the corporation is issued in exchange for such transfers.

The facts of the present proceedings bring them squarely within the foregoing rules, which have been applied in many similar cases. Those facts, briefly summarized, show that Fox Metropolitan Playhouses, Inc., the old corporation, was insolvent and a reorganization proceeding under section 77–B of the Bankruptcy Act was duly instituted. A plan of reorganization was submitted to the court, and, in the order confirming the plan and directing that it be carried out, the court stated that the debtor corporation was insolvent and hence acceptance of the plan of reorganization by its stockholders was not requisite to confirmation. Pursuant to the plan as carried out, a new corporation, Metropolitan Playhouses, Inc., was organized, with an authorized capital stock consisting of class A and class B shares. The holders of the 6½ percent convertible gold notes of the old corporation received, in exchange for each $1,000 principal amount of such notes, one 5 percent debenture in the principal amount of $550 and four shares of class B stock of the new corporation, plus $200 cash. The voting rights of the class A stock were subject only to the limited rights of the class B stockholders to elect not more than three of the nine directors of the new corporation. By direction of the bankruptcy court, the assets of the old corporation were transferred to the

new, but neither the old corporation nor its sole stockholder, Fox Theatres Corporation, received any recognition in the reorganization.

United Artists paid $425,000 cash for one-half of the class A stock and the other half of such stock was placed in escrow with the bank under an option agreement, which apparently finally resulted in the acquisition of the stock by United Artists.

Thus, in any event, the noteholders of the old corporation transferred property (convertible gold notes) to the new corporation in exchange for stock and securities (all of the authorized and issued class B stock and 5 percent debentures), plus cash. The mortgaged assets of the old corporation were transferred by order of the court to the new corporation, and constituted the security behind the 5 percent debentures. United Artists transferred property (money) to the new corporation in exchange for 50 percent of the authorized class A stock, which was all of the issued and outstanding stock of that class. A certificate for the remainder of the authorized class A stock was from its incipiency in escrow under an option agreement which forestalled its delivery until and unless such option should be exercised. It appears, therefore, that immediately after consummation of the transaction, the transferors collectively were in control of the new corporation through ownership of 100 percent of its issued class A and class B stocks, which comprised the only two classes of stock authorized.

The noteholders owned all of the equity in the properties of the old corporation, and it was those properties which gave the new corporation substance. Although the properties were not transferred to the new corporation directly by the bondholders, nevertheless they were transferred to the new corporation by order of the court solely for the benefit of the noteholders, and this circumstance, together with the fact that United Artists transferred money to the new corporation in exchange for stock, brings the transaction within section 112 (b) (5), if the amounts of the securities received by the transferors were substantially in proportion to their respective interests in the properties prior to exchange, which latter point will be discussed below.

In respect of the transfer of the mortgaged property of the old corporation to the new corporation under order of the court in the 77–B reorganization, the present proceedings are not distinguishable on the facts from *Commissioner* v. *Cement Investors, Inc.*, 122 Fed. (2d) 380. In that case it was held that the bondholders for whose benefit the transfer was ordered and made were transferors of the property within section 112 (b) (5). The court in its opinion said:

The holders of Industrial's bonds were entitled to a satisfaction of their indebtedness from the mortgaged property, or a statutory substitute therefor under § 77 B. They had acquired equitable rights in the property and were

entitled to have it disposed of under a plan fair and equitable to them. * * * Since no equity remained in the properties for the preferred and common stockholders, the properties passed under the jurisdiction of the court empowered to make fair and equitable disposition thereof for the benefit of the bondholders. In the exercise of that jurisdiction the bankruptcy court ordered the equitable rights and interests of the bondholders in the properties to be transferred to the Colorado Corporation in exchange for stock and bonds of that corporation. Pursuant to the order, all of the assets of Industrial and the Colorado Company were transferred to the Colorado Corporation. In substance, Industrial's bondholders were the transferors.

\* \* \* \* \* \* \*

Hence, the property was transferred to the Colorado Corporation solely in exchange for stock and securities of such corporation and immediately after the transfer the bondholders, the transferors, were in control of the Colorado Corporation, owning all of its stock, and no gain or loss should be recognized by reason of the provisions of § 112 (b) (5).

The only remaining question which merits consideration is whether or not the amount of securities received by each transferor was substantially in proportion to his interests in the property prior to the exchange. Petitioners on brief present an elaborate argument to demonstrate such proportionate interest, but their discussion involves analysis of a number of complex factors, including fair market values of stocks, securities, and assets extremely difficult to appraise. Without attempting a detailed analysis of such factors, we are convinced from the record that the statutory requirement on this point has been met. In respect of the money exchanged for class A stock by United Artists, a corporation which theretofore had had no interest in the old company, it seems self-evident that the stock received in exchange was substantially in proportion to the interest of United Artists in the money prior to such exchange. There is nothing in the record to suggest that the purchase of this stock by United Artists was at a price other than its fair value.

In respect of the class B stock and 5 percent debentures received by the noteholders of the old corporation in exchange for the 6½ percent convertible gold notes, it seems equally apparent that the new securities received in exchange were substantially in proportion to the interest of each in the old notes prior to the exchange, since each received, on the basis of $1,000 principal amount of the old notes, precisely the same amount of new securities and cash, and the mortgaged assets behind the old notes were transferred to the new company and constituted the security for the new debentures under the same mortgage lien. Furthermore, it appears that the plan of reorganization was worked out to the satisfaction of the various adverse and conflicting interests, each striving to drive the best possible bargain, and was consummated under the direction and with the approval of the bankruptcy court.

We hold that the transaction in controversy constituted transfers within section 112 (b) (5), *supra,* and hence did not give rise to gain recognizable for tax purposes in excess of the cash received by the transferor noteholders. The respective shares of such cash distributable to petitioners by the partnership were reported in their returns, and are not involved here. This conclusion renders it unnecessary to consider whether or not the transaction also was a nontaxable reorganization within the meaning of section 112 (g) (1), *supra.*

On the issue submitted for decision, respondent's determinations are disapproved.

*Decisions will be entered under Rule 50.*